**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ROBERT BRUCE KOHLER, and
VALERIE J. KOHLER,

        Plaintiffs,

v.

        CIVIL CASE NO. 03-60281
        HON. MARIANNE O. BATTANI

NORTH STAR STEEL COMPANY, INC.,

        Defendant.

_____/

**OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Before the Court is Defendant's Motion for Summary Judgment (Doc. #30). Defendant contends that Plaintiffs cannot establish a prima facie case of disability discrimination under the ADA, or intentional interference with plaintiff Bruce Kohler's ("Kohler") rights under ERISA. Defendant points to a number of reasons: (1) Plaintiffs cannot show that Kohler is a qualified individual with a disability under the ADA; (2) Plaintiffs cannot demonstrate any connection between attainment of benefits and Kohler's termination, and; (3) that even if Plaintiffs could establish those requirements, Kohler was fired for reasons that were not pretextual. Defendant also argues that because Kohler's claims fail, so does plaintiff Valerie Kohler's claim for loss of consortium. Plaintiffs contend that they have shown, at the least, that a genuine issue of material fact exists for each of the issues raised by Defendant.

North Star Steel Co. ("NSS") manufactures steel bars for the automotive industry. From December 13, 1982, to September 12, 2003, Plaintiff worked as a salaried, non-union employee

for NSS, performing safety and security duties.  Employees holding Kohler's position were responsible for checking in visitors, weighing trucks, inspecting fire extinguishers and safety equipment, and responding to emergency situations.  Kohler was also a certified EMT.  Safety/security officers worked on the second floor of the weigh inspection building ("security tower") at the plant entrance.  NSS kept shipping materials, parking stickers, and first aid supplies in the security tower.  The second floor of the security tower was separated into two spaces by a half door.  Part of the second floor was open to employees who sought parking stickers and meal money; the remaining space was not open to unauthorized employees and allegedly contained confidential information.

      Prior to December 31, 2003, NSS was a wholly-owned subsidiary of Cargill, Inc.  Kohler was covered by the employee benefits plans provided to NSS salaried employees by Cargill.  NSS and Cargill maintained centralized control over human resources policies and employee benefits plans for salaried NSS employees.

      In 1998, Kohler was diagnosed with Multiple Sclerosis ("MS").  Kohler claims that, after he informed NSS of his MS, he was treated differently than his colleagues because of his disease.  He claims that he was subjected to "more stringent standards of performance than his similarly situated peers" and was subject to unfair discipline.  Kohler also alleges that his condition was widely known among the plant's personnel.

      In December, 2002, Kohler began reporting to a new safety and security manger, Steve Bragg.  Bragg, in turn, reported to the human resources manager for the Monroe plant, Jan Moden.  Moden reported to vice president of human resources, Chuck Stanley, at Cargill Steel headquarters in Minnesota, and to Mike Roper who was the interim general plant manager.  In

mid-2003, Cargill informed NSS employees that it was actively seeking a buyer for its Monroe site.

On April 14, 2003, Kohler, along with other security personnel attended a staff meeting in the human resources office. During that meeting a confidentiality agreement was presented and explained to the security officers. Kohler signed the confidentiality agreement thereby agreeing to keep confidential any sensitive information he was privy to through his position. The security personnel were also told that no unauthorized employees were allowed in the security tower for reasons related to the new confidentiality agreement. There was an opportunity for all present to ask questions regarding the policy.

On May, 12, 2003, while attending "smoke school" in Florida, Kohler told Bragg that he intended to take a "medical retirement." Pl.'s Ex. 1A, Dep. of Kohler, at 97:12-22, 98:25-99:12, 106:18-107:4, 170:19-171:18.

On September 7, 2003, Kohler brought meat to work to cook for himself and his coworkers for lunch. Kohler invited certain employees to the security tower for hamburgers. At one point, Kohler left the security tower unattended while he retrieved soda for himself and others in another part of the plant a short distance away. Kohler was called on the telephone by Bragg, who witnessed the incident first hand, regarding employees eating hamburgers in the security tower and Kohler leaving them unattended. Bragg informed Kohler that employees were not permitted in the security tower, although Kohler contends that NSS had a past practice of ignoring that rule. Kohler states that he "truthfully and respectfully answered Bragg's questions regarding the presence of employees in the Building." Bragg testified that Kohler had initially lied about the presence of unauthorized employees in the security tower and about

whether they were unattended. Kohler also claims that Bragg clearly stated that no disciplinary action would be taken "absent a recurrence."

On September 12, 2003, Kohler attended an HR department meeting, where Moden discussed the need to make certain changes within the department to position NSS for acquisition. Moden then called Kohler aside after the meeting and fired him, citing the conversation he had with Bragg on September 7, 2003, as the reason for his termination.

On October 6, 2003, Kohler applied for disability benefits with the Social Security Administration ("SSA"). On October 22, 2003, Kohler filed a Charge of Discrimination against NSS with the Equal Employment Opportunity Commission ("EEOC"), alleging disability and age discrimination under the ADA and ADEA, respectively. The EEOC issued Kohler a Notice of Right to Sue on November 25, 2003. Plaintiffs then filed a complaint on December 17, 2003.

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

A trilogy of United States Supreme Court cases - Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, (1986); and Celotex Corp. v. Catrett, 477 U.S. 317, (1986) – set the standards for deciding whether to grant a motion for summary judgment. The Court of Appeals for the Sixth Circuit, in turn, has created guidelines in administering the principles set forth in the three Supreme Court cases above.

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). However, the court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)(citation omitted)(quoting Black's Law Dictionary 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50.

However, the evidence itself need not be the sort admissible at trial, with the exception that it must be more than the nonmovant's own pleadings and affidavits. Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a

jury could reasonably find for the non-movant. Anderson, 477 U.S. at 252. Also, where the non-moving party must meet a higher burden of proof than usual, that party must meet the same burden in resisting the motion for summary judgment. Id.

Summary judgment may be granted in cases in which a defendant's state of mind is at issue. Again, however, "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson, at 256. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita, 475 U.S. at 587).

**III.    ANALYSIS**

    **A.    Plaintiff Cannot Raise a Question of Material Fact that Defendant's Asserted Reasons for His Termination Have No Basis in Fact, that the Reasons Did Not in Fact Motivate the Discharge, or, if They Were Factors in the Employer's Decision, that They Were Jointly Insufficient to Motivate the Discharge.**

Plaintiffs contend that Defendant's reason for firing Kohler was a pretext given his 21-year employment record. Kohler believes he was fired as a cost cutting measure either to help ensure the sale of the company, or to alleviate NSS from liability for his benefit payments. This is allegedly supported by the fact that NSS departed from its normal practice of terminating an employee without warning, investigation, or an opportunity to explain his actions. Plaintiffs argue that the pretext is further evidenced by conflicting testimony of NSS decision-makers as to who recommended termination and why.

Defendant, on the other hand, contends it had a legitimate, non-discriminatory reason for

firing Kohler. Defendants contend that Kohler violated a written company policy regarding confidential information because of the presence of unauthorized personnel in the security tower. Defendant contends that because of the magnitude of the indiscretion, Plaintiffs cannot show that the reason given was a pretext, nor how Kohler was treated differently than other employees in its decision to terminate his employment. Defendant also argues that regardless of whether confidential information was actually disclosed, the security officers were unequivocally told that unauthorized personnel were not allowed in the security tower, that Kohler disregarded this reasonable work instruction, and that this episode showed sufficient insubordination to warrant termination. According to his termination letter, Plaintiff was terminated for violating NSS's confidentiality agreement, insubordination, lying to management, neglect of duty, and failure to enforce company policy. All of these infractions arose from the September 7, 2003, hamburger incident in the security tower.

> In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973), the Supreme Court set forth the framework for analyzing cases alleging workplace discrimination based on indirect evidence. Under the McDonnell Douglas burden-shifting framework, the plaintiff bears the burden of establishing, by a preponderance of the evidence, a prima facie case by demonstrating: "(1) membership in the protected class; (2) that she suffered an adverse action; (3) that she was qualified for the position; and (4) that she was replaced by someone outside the protected class or was treated differently from similarly situated members of the unprotected class." Warfield v. Lebanon Correctional Inst., 181 F.3d 723, 728-29 (6th Cir.1999). If the plaintiff establishes her prima facie case, then an inference of discrimination arises. At that point the burden of production shifts to the employer, who must set forth a legitimate, nondiscriminatory reason for the plaintiff's discharge. See id. at 729. The plaintiff then has the opportunity to demonstrate that the employer's proffered reason for taking the adverse action was pretextual. See id. To so demonstrate, the plaintiff must prove "that the [employer's] asserted reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in the [employer's] decision, that they were jointly insufficient to motivate the discharge." Id. (quotation omitted) (alterations in original).

Hoskins v. Oakland County Sheriff's Dept., 227 F.3d 719, 731 (6th Cir. 2000).  The same burden shifting analysis applies to ERISA claims as well.  See Smith v. Ameritech, 129 F.3d 857, 865 (6th Cir. 1997).

Plaintiffs cannot show that the "proffered bases for the plaintiff's discharge never happened, i.e., that they are factually false."  Manzer v. Diamond Shamrock, 29 F.3d 1078, 1084 (6th Cir. 1994).  It is undisputed that the occurrence on September 7, 2003, actually happened.  What is disputed is whether NSS had a past practice of allowing unauthorized personnel presence, and whether Kohler initially lied about unauthorized personnel presence and leaving them unattended.  Regardless of what the alleged past practice was, the company policy that was in force at the time of his discharge was explicitly spelled out for the safety and security officers in the April 14, 2003, staff meeting.  During this staff meeting, the confidentiality agreement was explained and signed by the safety and security officers.  The staff present at the meeting were also informed that no unauthorized personnel were allowed in the security tower, and informed of the reason behind this policy.

Next, Plaintiffs cannot show "that the reasons did not in fact motivate the discharge, or, if they were factors in the [employer's] decision, that they were jointly insufficient to motivate the discharge."  Hoskins, 227 F.3d at 731.  In order to show that Defendant's reasons did not in fact motivate the discharge, Plaintiffs must "prove that employer's proffered reason is unworthy of credence."  Gavalik v. Continental Can Co., 812 F.2d 834, 853 (3d Cir. 1987).  The plaintiff must "indict the credibility of his employer's explanation by circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant.  "In other words, . . . the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than

not' that the employer's explanation is a pretext, or a coverup." Manzer, 29 F.3d at 1084. There is no testimonial or other evidence that supports the contention that Moden or Stanley knew of Plaintiff's intent to file for benefits. Nor can Plaintiffs establish that Stanley even knew that he had MS when Stanley countenanced Plaintiff's termination. According to his testimony, Stanley sanctioned Plaintiff's termination based on Moden's proffered reason of Plaintiff's failure to abide by a reasonable work instruction after having been warned not to engage in prohibited conduct. Def.'s Ex. F, Deposition of Stanley at pages 25, 29-32. Even assuming, *arguendo*, that Moden knew that Plaintiff intended to file for disability benefits, Stanley's decision to sanction Plaintiff's termination for the reasons given by Moden defeats Plaintiffs' claims. Therefore, Plaintiffs have not shown that the reasons given by Defendant are not worthy of credence, nor have they shown that the "sheer weight of the circumstantial evidence makes it 'more likely than not' that the employer's explanation is a pretext, or a coverup." Manzer, 29 F.3d at 1084.

     Finally, Plaintiffs contend that the reasons proffered by Defendant were insufficient to motivate the discharge. In support of this argument, Plaintiffs point to numerous occasions where other safety/security officers engaged in less than professional conduct and were not fired for their actions, and to an unwritten policy of warning employees for first time violations. However, the other safety/security officers did not engage in substantially identical conduct. The incidents Plaintiffs point to range from verbal altercations and failure to wear proper shoes to unidentified mistakes; not the breach of a written confidentiality agreement, or disregarding clearly explained directives. Here, Plaintiff violated a written policy, which on its face notified the signatory that immediate dismissal was the result of a breach, and disregarded instructions from his supervisors. Plaintiffs have not shown that those reasons were insufficient to warrant

9

discharge by presenting evidence showing that it is more likely than not that the employer's explanation is a pretext, or a coverup." Manzer, 29 F.3d at 1084.

### B. Plaintiff Valerie Kohler's Derivative Claim for Loss of Consortium Must Also Be Dismissed.

"The derivative claim of loss of consortium stands or falls on the primary claims in the complaint. Long v. Chelsea Community Hospital, 219 Mich. App. 578, 557 N.W.2d 157 (1996)." Loper v. Computer Network Technology Corp., 128 F. Supp.2d 1061, 1069 (E.D. Mich. 2001).

Because, plaintiff Bruce Kohler's claims under ERISA and the ADA are dismissed, plaintiff Valerie Kohler's derivative loss of consortium claim is dismissed as well.

### IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's April 14, 2005, Motion for Summary Judgment is **GRANTED.**

                                                                 s/Marianne O. Battani
                                                                 MARIANNE O. BATTANI
                                                                 UNITED STATES DISTRICT JUDGE

DATED:     **August 11, 2005**

### CERTIFICATE OF SERVICE

Copies of this Order were mailed to Maureen Crane and Joel Spitz on this date by ordinary

mail and/or electronic filing.

                                                     s/Bernadette M. Thebolt
                                                     DEPUTY CLERK